UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TERRY CANTY,

Plaintiff,

v.

THE FOLLOWING PERSONS, BOTH INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES:
UNITED STATES OF AMERICA; FEDERAL BUREAU OF PRISONS; U.F. AGENT 1; U.F. AGENT 2; U.F. AGENT 3; U.F. AGENT 4; U.F. AGENT 5; U.F. AGENT 6,

Defendants.

Civil No.00-1333 (RHK/ESS)

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned United States Magistrate Judge on Plaintiff Terry Canty's pro se complaint. Plaintiff's complaint presents a Bivens[1] action for violation of Plaintiff's Eighth Amendment rights and a cause of action for negligence pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq. [Docket No. 1]. Plaintiff seeks monetary relief. Id.

Defendants have filed alternative motions for dismissal and summary judgment, along with a supporting memorandum and accompanying affidavits. [Docket Nos. 14-18].

This Court has jurisdiction over the Bivens action and the FTCA action pursuant to 28 U.S.C. §§ 1331 and 1346(b), respectively. These proceedings have been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, it is recommended that Defendants' motion be granted.

[1] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S.388, 91 S.Ct. 1999 (1971).

FILED AUG 2 [illegible]
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

From January 2, 1997 to November 26, 1997 Plaintiff was incarcerated at FMC Rochester, Minnesota, as a part of a 60 month sentence for conspiracy with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) [Docket No. 15]. On June 17, 1997, shortly before 8:40 p.m., Plaintiff was cooking rice, which required him to heat water in a microwave oven [Docket No. 1]. Upon removing the "scalding" water from the microwave oven, he spilled it in his lap, causing second-degree burns [Docket Nos. 1, 15].[2] U.F. Agents 1 and 2 (hereinafter D1 and D2, respectively[3]) answered Plaintiff's calls for assistance. D1 or D2 remarked to the effect that the Plaintiff did not "look too badly burned" [Docket No. 1].[4]

At approximately 8:40 p.m., Plaintiff was sent to the infirmary, where he was treated by D3. Plaintiff alleges that D3 knew that Plaintiff's legs needed to be "wrapped," but only applied cream to his burns. Within a few days, blisters formed on Plaintiff's legs where he had spilled the water. The Plaintiff completed a BP-9 form, requesting the assistance of a physician who specialized in the treatment of burns. Two days later, D4 approached the Plaintiff and ordered him to sign a "consent to treatment form." Plaintiff refused to sign the form, alleging that to do so would have amounted to a certification that he had received appropriate treatment, a certification the Plaintiff did not want to make. D4 ordered D5 to confine Plaintiff for refusing a direct order. Plaintiff then alleges that D3

---

[2]Plaintiff is a paraplegic; consequently he was seated in his wheelchair at the time of this incident.

[3]Plaintiff "names" six Unidentified Federal Agents in his complaint. The caption of his complaint abbreviates this designation to read, "U.F. Agent." The Court will further abbreviate their designation and refer to them as D1 through D6, respectively.

[4]Unless otherwise specified, factual information in this section is drawn from Plaintiff's complaint [Docket No. 1].

and D6 altered Plaintiff's medical records "to reduce or eliminate the Defendants' liability and/or damages by dishonest and illegal means." Plaintiff also alleges that he was given the opportunity to take photographs of the injuries to his legs. Plaintiff planned to take pictures of his "worsening burn injuries." When the Defendants discovered Plaintiff's plans, they retaliated against him.

Count One of Plaintiff's complaint contains a Bivens claim in which Plaintiff seeks "actual and punitive money damages, jointly and severally from each and all Defendants." Count Two of Plaintiff's Complaint contains an FTCA claim in which Plaintiff seeks "actual and punitive money damages, payable by the United States."

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The Defendants bring alternative motions to dismiss or for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56, respectively [Docket No. 14]. Pursuant to Rule 12(b)(1), a party may bring a motion for dismissal for lack of subject matter jurisdiction. The Defendants fail to provide any legal authority or analysis in support of this motion. As stated above, this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1346(b). However, Plaintiff's complaint does not clearly state against which Defendants each action is brought. This ambiguity raises questions about the Court's subject matter jurisdiction. However, for the sake of clarity, the Court will deal with such matters below in its consideration of the specific counts in the complaint.

### B. Summary Judgment Standard

With respect to Defendants' summary judgment motion, summary judgment is appropriate only when there is no genuine issue as to any material fact and the case may be decided on purely legal grounds. Fed. R. Civ. P. 56(c); Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).

To be considered material, any disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586, n. 11; see also Krenik v. County of Le Seur, 47 F.3d 953, 957 (8th Cir. 1995); Fed. R. Civ. P. 56(e).

When there can be no reasonable construction of the facts that would allow the non-moving party to prevail, the remedy of summary judgment is appropriate. Matsushita, 475 U.S. at 586-87. Summary judgment is not appropriate, however, where there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250.

Guided by these standards, the court will now proceed to determine whether Defendants are entitled judgment under the applicable law.

C. Plaintiff's Bivens Action

Count One of Plaintiff's complaint alleges a Bivens action against "each and all Defendants." As a preliminary matter, the Court acknowledges that Plaintiff's complaint is stated too broadly.

Plaintiff cannot prevail on a Bivens action against the United States of America and the Federal Bureau of Prisons. See Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982)("Bivens and its progeny do not waive sovereign immunity for actions against the United States; it implies a cause of action only against federal officials"); see also Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998)("it is well settled that a Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity"). Furthermore, employees sued in their official capacity have sovereign immunity from Bivens action. Phelps v. U.S. Federal Government, 15 F.3d 735, 739 (8th Cir. 1994). Thus, the United States of America, the Federal Bureaus of Prisons and, to the extent that they have been sued in their official capacities, D1 through D6 retain sovereign immunity with respect to Plaintiff's Bivens action. The consent to jurisdiction involved in the waiver of sovereign immunity is not consent to *personal* jurisdiction over the sovereign. Instead, it is a consent to the Court's jurisdiction over the *subject matter* of the suit. See Laswell, 683 F.2d at 267 (concluding that suits not within the waiver of sovereign immunity in the FTCA should be dismissed for lack of subject matter jurisdiction). Thus, because these Defendants have not waived their sovereign immunity, they are entitled to dismissal on Count One of Plaintiff's complaint for lack of subject matter jurisdiction.

The Defendants, D1 through D6, have also been sued in their individual capacity. In this respect, their motion for summary judgment should be granted. Under Celotex, the Defendants, as the moving parties, are required to provide sufficient evidence to shift the burden to the Plaintiff to demonstrate that there is a genuine issue of material fact for trial. The Defendants presented three "declarations" and accompanying exhibits [Docket Nos. 16-18].[5] As discussed below, these

[5]The Eighth Circuit has held that, pursuant to 28 U.S.C. § 1746, a sworn declaration under penalty of perjury satisfies affidavit requirements in federal proceedings. Burgess v.

declarations effectively shift the burden of production to the Plaintiff. The Plaintiff has not responded to the motion for summary judgment, but has merely rested on his pleadings.[6]

Plaintiff alleges that the quality of medical care he received from the Defendants was so poor that it constituted a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. The government is obliged to provide medical care for those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290 (1976). In order to state a cognizable claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106, at 292. The evidence presented by the Defendants in support of their motion demonstrates that they did not act with deliberate indifference to Plaintiff medical needs; the Plaintiff has not submitted any evidence to support his allegations. Thus, the Defendants are entitled to judgment as a matter of law on Plaintiff's Bivens action.

The factual evidence presented by the Defendants differs from the account in Plaintiff's complaint. On June 17, 1997, at 8:45 p.m., Plaintiff was examined after he spilled hot water on his legs [Docket No. 18, Ex. 1]. It was determined that Plaintiff had second-degree burns on his thighs. Id. He was told to apply Silvadene cream to his burns three times per day, to keep the area clean and dry, and to avoid rubbing his thighs together. Id. Sandy Legere, a nurse on duty on the night in

---

Moore, 39 F.3d 216, 217-218 (8th Cir. 1994). The declarations submitted by the Defendants meet the requirements of 28 U.S.C. § 1746 and the Court may consider them for purposes of summary judgment.

[6]Under Burgess, a verified complaint may meet the requirements of 28 U.S.C. § 1746 and be sufficient to rebut evidence presented in a summary judgment motion. Burgess, 39 F.3d at 217-218 However, Plaintiff's complaint is not verified and, thus, insufficient under Burgess [Docket No. 1].

question, stated that she "applied the treatment" to Plaintiff's legs that night [Docket No. 18, Ex. 2].[7] Because Plaintiff is a paraplegic, he was not given any pain medication. The following day, he was given more Silvadene cream; after a discussion with a doctor, he was also given pain medication on June 18, 20, and 23 [Docket No. 18, Exs. 3, 4]. Plaintiff was instructed to apply the cream to his legs three times per day for 14 days. Id. The exhibits indicate that Plaintiff was seen by members of the medical staff at least 11 times, almost every day, from June 17 to July 1; on these occasions, the medical staff cleaned and drained his wounds and changed the dressing on them [Docket No. 18, Exs. 4-6, 9]. His treatment continued. On August 5, 1997, the records indicate that Plaintiff's burns appeared to be healing well and the nurse decided to discontinue use of Silvadene cream [Docket No. 18, Ex 9].

There is no evidence in the record that Plaintiff was ordered to sign a consent to treatment form at any time or that he was disciplined for refusing to sign one. However, Plaintiff was disciplined on two occasions in the month of July. Only the first occasion was related to Plaintiff's refusal of a direct order, as alleged in Paragraph 19 of the complaint [Docket Nos. 1, 18, Exs. 7, 8].[8]

At 7:00 a.m. on July 15, 1997, Plaintiff arrived at the nurse's station and asked when he could have his dressings changed [Docket No. 18, Ex. 7]. The nurse on duty, Christine Eck ("Eck"),[9] told him that she would change them at 7:45 a.m. Id. Plaintiff wanted to have his

---

[7]Based upon the complaint, Ms. Legere appears to correspond with Defendant, D3 [Docket Nos. 1, 18, Ex. 2].

[8]The second incident involved an allegation of "insolence to staff"; this behavior was unrelated to his treatment [Docket No. 18, Ex. 8]. For these reasons, the Court concludes that this is not the incident referenced in the complaint and is irrelevant to these proceedings.

[9]In attempting to reconcile the allegations of the complaint with the evidence in the record, Eck appears to correspond, however poorly, to D4 [Docket Nos. 1, 18, Ex. 7].

dressings changed earlier so he could go to sleep, but Eck refused, stating that she needed to manage the office until 7:45. Id. Plaintiff told Eck that she would have to wake him up because he was going to sleep. Id. In Eck's words, she said, "no, you need to be here at 7:45." Id. Plaintiff did not return and Eck reported the Plaintiff for "refusing to obey an order of any staff member." Id. The Activities Lieutenant, Marc Niemyer,[10] investigated the incident and opined that the Plaintiff was properly charged. Id. Based on that record, Plaintiff was disciplined.

There is no evidence to support Plaintiff's claim that the Defendants tampered with his medical records. In addition, Plaintiff alleges that he wanted to take pictures of his "worsening" injuries; he alleges that the Defendants retaliated against him when they discovered his plans. There is no evidence that he tried to take pictures of his injuries, that his injuries were worsening, or that the Defendants retaliated against him for wanting to take pictures of his injuries. Furthermore, because Plaintiff is unclear about when these events took place, it is impossible for the Court to determine what relationship, if any, the alleged retaliation may have to the two incidents for which Plaintiff was disciplined.

Plaintiff's complaint alleges that D3, "a nurse, only put some sort of cream on [Plaintiff's] legs when he or she knew they needed wrapping" [Docket No. 1]. Under Estelle, such an allegation is sufficient to state a cognizable Bivens claim because it suggests that the Defendant acted with deliberate indifference to a serious medical need. However, the evidence contradicts Plaintiff's allegation. The treating physician did not order that Plaintiff's legs be wrapped [Docket No. 18, Ex. 1]. Thus, the nurse's failure to wrap Plaintiff's legs, without more, does not suggest that she was deliberately indifferent to Plaintiff's medical needs. On the contrary, the evidence suggests that the

[10]In attempting to reconcile the allegations of the complaint with the evidence in the record, Marc Niemyer appears to correspond, however poorly, to D5 [Docket Nos. 1, 18, Ex. 7].

medical staff was very attentive to Plaintiff's needs. He was seen regularly with regard to his injuries and, after approximately seven weeks, the burns were healed. The fact that the nurse did not wrap his legs, especially when such a measure was not ordered by the treating physician, does not constitute cruel and unusual punishment. See Estelle, 429 U.S. at 107, 97 S.Ct. at 293 ("a medical decision not to order an X-ray, *or like measures*, does not represent cruel and unusual punishment")(emphasis added).

The Defendants presented sufficient evidence to demonstrate that they did not act with deliberate indifference to Plaintiff's medical needs, did not discipline Plaintiff in retaliation for his failure to sign a medical form, and did not tamper with Plaintiff's medical records. Under the burden-shifting mechanism of Celotex, Plaintiff was required to present evidence in support of his allegations. Based upon the Defendants' evidence, Plaintiff's failure to respond to the motion at all, and the applicable standard in Estelle, Defendants' motion for summary judgment should be granted.

D. Plaintiff's FTCA Claim

"All suits brought under the FTCA must be brought against the United States." Atorie Air, Inc. v. F.A.A. of U.S. Dept. of Transp., 942 F.2d 954, 957 (5th Cir. 1991); see also Morris v. U. S., 521 F.2d 872, 874 (9th Cir. 1975). While the Plaintiff does not explain against whom each count of his complaint is alleged, the complaint appears to comply with this restriction.[11] Count Two of Plaintiff's complaint alleges an FTCA claim for "actual and punitive money damages, payable by the United States" [Docket No. 1]. Thus, although the cause of action is based on the "wanton negligence of each and every defendant," it appears that the United States is the only Defendant for

[11]However, while the United States may be the proper defendant under the FTCA, the Plaintiff is not entitled to the punitive damages he seeks in the complaint. See 28 U.S.C. § 2674; Molzof v. United States, 502 U.S. 301, 112 S.Ct. 711 (1992).

purposes of the FTCA claim. To the extent that Plaintiff's complaint alleges an FTCA claim against any party other than the United States, the Court should dismiss it for lack of subject matter jurisdiction.[12]

With respect to the remaining Defendant, whether a claim can be made out under the FTCA depends upon whether a private individual under like circumstances would be liable under state law. United States v. Muniz, 374 U.S. 150, 153, 83 S.Ct. 1850, 1853 (1963). "Under the [FTCA], damages are determined by the law of the State where the tortious act was committed." Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 752 (1956); see also Krutchen v. United States, 914 F.2d 1106, 1107 (8th Cir. 1990)(the law of the state in which the alleged tort occurred governs all substantive issues in a Federal Tort Claims case).

The Defendant argues that Plaintiff's FTCA claim amounts to an action for malpractice. Because Plaintiff's claim is premised upon the allegedly poor medical care he received, the Court agrees that his case is founded upon a theory of medical malpractice. Thus, the Defendant argues that Plaintiff's claim should be dismissed because the Plaintiff failed to comply with the filing requirements of Minnesota Statutes, § 145.682. Section 145.682, Subdivision 2 states, in relevant part, that:

> "In an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) ... serve upon the defendant with the summons and complaint an [affidavit of expert review]; and (2) serve upon defendant within 180 days after commencement of the suit an affidavit [identifying experts to be called at trial]."

---

[12] See Laswell, 683 F.2d at 267 (concluding that suits not within the waiver of sovereign immunity in the FTCA should be dismissed for lack of subject matter jurisdiction); see also Atorie Air, Inc., 942 F.2d at 958 (cause of action against FAA officials is not cognizable under FTCA).

The Plaintiff has failed to comply with these provisions. Failure to comply with these provisions results, upon motion, in mandatory dismissal. See Minnesota Statutes, § 145.682, Subdivision 6. Thus, if Section 145.682 constitutes the substantive law for this case, if Plaintiff was required to comply with its terms, and if Plaintiff failed to do so, dismissal is appropriate.

While § 145.682 describes *procedural* requirements for the commencement of a malpractice claim, Judges in this District have construed it as a *substantive* provision in cases involving FTCA claims and diversity jurisdiction. See Oslund v. United States, 701 F.Supp. 710, 714 (D. Minn. 1988)(FTCA claim); Ellingson v. Walgreen Co., 78 F.Supp.2d 965, 968 (D.Minn. 1999)(diversity jurisdiction); but see Hughes v. Mayo Clinic, 834 F.2d 713 (8th Cir. 1987)(concluding federal rules of procedure governed for purposes of determining the date of commencement of a medical malpractice case).[13] While there is no binding precedent on this issue, the Court recognizes that the presiding Judge in this matter has required parties to comply with the affidavit requirements of § 145.682. See Carmen v. Mayo Foundation, 81 F.3d 165, 1996 WL 137272 (8th Cir. 1996). Accordingly, it is recommended that the Court construe § 145.682 as the substantive law to be applied in Plaintiff's FTCA claim. Having concluded that Minnesota Statutes, § 145.682 is the substantive law to be applied in this matter, the Court must determine whether, pursuant to § 145.682, Subdivision 2, expert testimony is necessary to establish a *prima facie* case of malpractice. See Vakil v. Mayo Clinic, 878 F.2d 238 (8th Cir. 1989).

In order to establish a prima facie case of medical malpractice under Minnesota law, the

---

[13]None of these cases involved claims by prisoners; thus, they avoided the question whether an incarcerated individual is capable of obtaining the necessary expert review in order to comply with the affidavit requirements of Section 145.682. However, without considering the question whether the affidavit requirement is substantive or procedural, the Eighth Circuit has affirmed dismissals of malpractice claims involving prisoners. See Bellecourt v. United States, 994 F.2d 427 (8th Cir. 1993).

Plaintiff must prove that it is more probable than not that his injury was a result of the health care provider's negligence. Leubner v. Sterner, 493 N.W.2d 119, 121 (Minn. 1992). "The elements of negligence are (1) duty; (2) breach of that duty; (3) that the breach of duty be the proximate cause of plaintiff's injury; and (4) that plaintiff did in fact suffer injury." Gradjelick v. Hance, 627 N.W.2d 708, 711 (Minn. App. 2001). The Minnesota Supreme Court has held that when the acts or omissions complained of are within the general knowledge and experience of lay persons, expert testimony is not necessary to establish a standard of care, even in cases of medical malpractice. Tousignant v. St. Louis County, Minn., 615 N.W.2d 53, 58 (Minn. 2000). Nonetheless, the Tousignant Court acknowledged that expert testimony is generally required to establish the standard of care and the departure therefrom. Id.

Within this context, the Court concludes that Plaintiff can only establish the first element of his *prima facie* case. As stated above, the government has a duty to provide medical care for those whom it is punishing by incarceration. Estelle v. Gamble, supra. Plaintiff failed to establish the remaining three elements of his *prima facie* case. The complaint states that D3 deprived him of medical care she knew he needed; D3 only applied medicated cream to Plaintiff's legs when she knew he needed to have his legs wrapped. It is not disputed that Plaintiff required some medical attention; if Plaintiff had not been treated at all, expert testimony would not have been necessary to establish a breach of the applicable standard of care. Tousignant, supra. However, because Plaintiff was treated by D3, the sufficiency of such treatment becomes an issue. Expert testimony is necessary for the fact-finder to determine what type of care Plaintiff "needed;" whether Plaintiff legs "needed" to be wrapped or not is outside the general knowledge or experience of a lay person. Only when Plaintiff's needs are determined can one evaluate whether D3's treatment violated that standard of care. Thus, Plaintiff is bound by the affidavit requirements of § 145.682, Subdivision 2.

Plaintiff has failed to provide the necessary evidence of the applicable standard of care and the departure therefrom. Because an expert affidavit is necessary for Plaintiff to establish a *prima facie* case of medical malpractice, and because he failed to provide an affidavit within 180 days of the commencement of the suit, Plaintiff's FTCA claim should be dismissed. See Minnesota Statutes, § 145.682, Subdivisions 2, 4, 6.[14]

However, even if the Court determines that Plaintiff does not need to present expert testimony in order to establish a prima facie case for malpractice, summary judgment is appropriate. The Defendant has presented evidence that Plaintiff received extensive medical attention and that his burns healed within a regularly short period of time. This evidence demonstrates that the Defendants did not breach their duty of care and that Plaintiff did not suffer any injury as a result of their conduct. Plaintiff has failed to respond to this evidence. Because Plaintiff has failed to present any genuine issues of material fact for trial, summary judgment is appropriate under Celotex.

**III. RECOMMENDATION**

With respect to Count One of the complaint, the Court lacks subject matter jurisdiction over the United States of America, the Federal Bureau of Prisons, and, in their official capacities,

---

[14]The Defendant also argues that dismissal is appropriate because Plaintiff did not submit an Affidavit of Expert Review pursuant to § 145.682, Subdivisions 2, 4. However, pursuant to Subdivision 6, dismissal is only an appropriate remedy for such an omission if the affidavit is not served within 60 days of a demand for the affidavit. The Defendant alleges that it demanded an affidavit from the Plaintiff in a letter dated February 12, 2001 [Docket No. 16, Ex. 1]. The Defendant's letter does not "demand" an affidavit; it "advises" the Plaintiff that his complaint is "fatally defective" in its failure to include one. Furthermore, the Defendant, in suggesting that Plaintiff's affidavit "must be immediately forthcoming," ignores–or simply misconstrues– the 60-day period provided for in the plain language of Subdivision 6. The letter's failure to refer to § 145.682 explicitly, coupled with its failure to summarize the law accurately, makes it impossible for the Court to conclude that Defendant's February 12, 2001 was intended as a demand for an Affidavit of Expert Review pursuant to § 145.682, Subdivision 6.

U.F. Agent 1, U.F. Agent 2, U.F. Agent 3, U.F. Agent 4, U.F. Agent 5, and U.F. Agent 6; on that basis, Defendants' Rule 12(b)(1) motion should be granted. With respect to U.F. Agent 1, U.F. Agent 2, U.F. Agent 3, U.F. Agent 4, U.F. Agent 5, and U.F. Agent 6 in their individual capacity, summary judgment is appropriate with respect to Count One of the complaint; on that basis, Defendants' motion for summary judgment should be granted. With respect to Count Two of the Complaint, all of the Defendants except the United States of America are entitled to dismissal for lack of subject matter jurisdiction; on that basis Defendants' Rule 12(b)(1) motion should be granted. With respect to Count Two of the complaint, the United States of America is entitled to judgment as a matter of law; on that basis, Defendant's motion for summary judgment should be granted. The Court concludes that Defendants' alternative motions dispose of in their entirety the Counts alleged in the complaint. Accordingly, based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED**:

1. That Defendants' alternative motions for dismissal or for summary judgment [Docket No. 15] be GRANTED; and

2. That this action be DISMISSED WITH PREJUDICE.

Dated: August 21, 2001

E. S. SWEARINGEN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.